We have three cases this morning and the first is Hamer v. Livanova Deutschland GmbH and the numbers are 20-1656 and 1657 and then Mr. Santola and Weinbrenner. Mr. Santola. Yes sir, good morning your honors and may it please the court. I would like to reserve five minutes for rebuttal. Not a problem, go ahead. Thank you your honors. In this case, your honors, the trial court abused its discretion by eliminating a viable injury through the use of a case management order and it was an abusive discretion for the trial court to change the substantive Louisiana law and the requirements for a claim under Louisiana law through the procedural mechanism of the case management order. Can I just ask you in connection with this case management order 15. Yes sir. On what did the court, the MDL court did not cite rule 41b in its dismissal order. Correct. I know you cite cases in your brief dealing with dismissals under federal rule civil procedure 41b. What is the procedural basis for the MDL order here? I'm not sure your honor, besides they say that it's I'll check the I'm not sure the procedural basis besides it's non-compliance with its own case management order. Yeah I'm not sure I have another any answer but that but I'm just trying to see if there's anything. I know that this is something that has come into courts as a as a way of case management and it was taken from a New Jersey supreme court or superior New Jersey state court decision way back in the in the 80s and it seems to work but the question is how do we go about the process of making it work as efficiently and as fairly as possible. And we don't have any objection to a lone pine order per se and there are parts of CMO 15 which are completely in compliance with and the body of jurisprudence since lone pine which is a trial court can move the procedure up back however it may like to require the the claimants in this case to have a prima facie showing earlier in the procedure than you would normally expect in the life of a case. And and part of CMO 15 in this case did that and that was requiring plaintiffs to get an expert to prove that they were that they had this particular machine in its surgery requiring the plaintiffs to have some sort of path of infection in which the plaintiffs did in response to and Mr. Hammer did in particular in response to CMO 15 with the expert opinion of Dr. Chad Roy. We're not objecting to a lone pine order per se or categorically saying that lone pine orders are incorrect. What we're saying is that this particular case management order added a requirement through the guise of a procedural requirement or a timing issue that is not a requirement under the substance of Louisiana law to recover on a case such as this particular case against Soren 310. Mr. Centola, so you're not disputing that a district court can order all you didn't submit one. So shouldn't you have gone through and submitted one saying whatever you could say about your case? I mean, if the district court has the authority to order these reports. With all due respect, we did submit one for Dr. Chad Roy, and it is in the record. And it does not say that Mr. Hammer has an NTM infection. But it does talk about the diagnosis to Mr. Hammer the path of exposure and the causation. There is a report on causation. It's just not specifying that he has an NTM infection because he doesn't have an NTM infection. It didn't grow out NTM, it grew out staff. But we do have a report in the record of causation. It's just not for the eventual injury that the defendants want. Okay, so there's a report and it's not case specific on the relevant point. But your dispute is more that it can't be case specific or reasons that shouldn't foreclose it substantively. Can I ask you, you're leaning on the police factors, but you didn't brief them, I think, in your response to the district court's order to show cause. Why didn't you and should we treat that as a waiver or forfeiture of the police argument? Well, we didn't because we didn't think that the next step was going to be a dismissal because dismissal is a harsh remedy under police. And we were not asked to brief it on that issue. We do not expect or we do not hope that that becomes a waiver. You didn't move to reconsider based on police after the dismissal or anything like that? We did not, Your Honor. Okay, so why shouldn't we waiver? Because of the harsh remedy and because of the case law in the circuit that says that dismissal is such a harsh remedy. And so it shouldn't take away the claim of the individual based on the faults of attorneys or lack thereof. And so we shouldn't have any waiver of the police factors in light of the court going, in our opinion, a step beyond and a step further in this case of eliminating an entire classification of injuries, that's a viable injury due to the fault of the defendant, basically without any legal basis from the trial court. Let me say, I have no problem with the Lone Pine order. I think that that was an appropriate order to facilitate the management of this case. But I do have a lot of problem with dismissing your case with prejudice. I used to defend medical malpractice cases. So I learned a bit of medicine along the way. And I can see where there could be a cause of action here. And I think that it would complicate the multi-district litigation to look into whether the organism was killed by the antibiotic before they could culture it out or whether they should have delayed on use of the antibiotics till they were sure they had the appropriate infection. And I think you ought to be allowed to develop this in the Louisiana court, let the multi-district litigation go easily along with those cases that did produce this type of infection. So I would have no problem with your case being dismissed, but dismissed without prejudice with instructions to bring it down in Louisiana. Now, do you have any problem with a solution like that? Not at all, Your Honor. That's what we requested in our companion filing and maybe it wasn't procedurally accurate with the trial court in asking the trial court to have a suggestion of transfer to the JPML, but that's what we're seeking. If the trial court, if the MDL court believes that our case doesn't fit in the confines of the MDL because our injury mechanism is different, we have no objection to that. But our request is to go back to Louisiana where we filed the case originally, because the MDL court has determined that this is not proper for the MDL, but not to dismiss us with prejudice, but instead let us go back to Louisiana. Just one final question, one quick question. I was going to ask, you say you don't have problems with lone pine orders in general. I thought your next statement was going to be that you did have a problem with this particular specific lone pine order because of what it required, but it sounds now like what you're saying is no. My real concern is I'm just challenged the MDL court's actions after it entered the dismissal. Your Honor, it's yes and. We have a problem with one particular requirement of this lone pine order, and that particular requirement is the proof of NTM infection after culture, because regardless of whether or not, as Judge Roth has discussed a little bit earlier, regardless of whether or not it grows out a culture of 21 days, does it mean we do not have a cause of action? It doesn't eliminate our cause of action. And what this lone pine order did was not only required an expert opinion on causation at an earlier time, that's the part we have no problem with. What it did then was that it eliminated an entire classification of injury that would be recoverable under Louisiana law that is not recoverable because of the strict confines of this order, and that order is in contravention of Louisiana law. So we don't have a problem with the lone pine order as a general. We do have a problem with this specific requirement of this specific injury. And I know that the appellees relay highly on the asbestos MDL in their brief, and Your Honor has had way more experience with that asbestos MDL than I do, but it's almost like in the asbestos MDL, they required a proof of an asbestos-related injury, but they still had the ability to have an asbestosis claim, a lung cancer claim, a mesothelioma claim. It's as if in this case, the MDL judge has said, we're not going to want to prove, we're not going to have a requirement of an infection, we're going to have a requirement of a particular infection, even though these other infections may be recoverable. It's as if in the asbestos MDL, they said, we're going to eliminate all asbestosis claims, and you can only bring mesothelioma claims. That is not probably good for CMS. Isn't Judge Ross' suggestion really what you truly want? You just want to be back in Louisiana. Absolutely. All right. Why don't we hear from Mr. Weinbrenner? Thank you, Your Honor. Good morning, Your Honors. Joe Weinbrenner for Appellee Soren Group USA, now known as Levenova Holding USA. And may it please the court, the district court's order of dismissal should be affirmed for one simple reason. And that is a claimant cannot base a cause of action that a product caused an injury unless that claimant actually has evidence that he had the injury. And in this particular case, Mr. Hammer pleads and in discovery produced a sworn plaintiff fact sheet contending that he had a mycobacteria obsessus infection. Mycobacteria obsessus is a form of non-tuberculous mycobacteria, or NTM. And that is the entire subject of the 3T multi-district litigation. Okay. Can we start with a preliminary? Is there any reason not to treat this as a Rule 41 be dismissed? I don't believe so, Your Honor. Okay. So we can treat that as taken, that this is, even though it wasn't said expressly, this is 41B. Why shouldn't we be applying the police factors? Is there any good reason not to apply them? We can talk then about how to apply the six of them. But before we get to that, is there any legal reason why we shouldn't be walking through a police analysis here? Yes. In the asbestos six decision, which is cited in our briefing beginning at page 16, this court addressed a factual scenario that is analogous and virtually identical to what we're facing here. It was a dismissal pursuant to a lone pine order in the context of multi-district litigation. In the case management order, the court provided very clear guidance what the minimum threshold of evidence would be in order to prove an actionable injury. And that was an asbestos-related disease. There were multiple plaintiffs that did not have a sufficient evidence to prove an asbestos-related disease, and their cases were dismissed pursuant to that lone pine order. Did they allege that they could prove it under a different body of law or different jurisdiction or something else? I don't think that case was like this one in that respect. Well, they did allege. Well, there was one plaintiff in particular that only had evidence of plural thickening and made the contention that evidence of plural thickening should be sufficient to establish an actionable injury. And the court had already determined that evidence of plural thickening without symptoms, without its symptomatic asbestos-related disease would not be sufficient. And what this is, is the court is not applying a substantive legal standard here. The court is setting a threshold for a minimum threshold of evidence that must be presented in order to demonstrate that plaintiffs have the injury that they claim they have. Wait a second. So is this the in re asbestos number six case you're talking about? It is, Your Honor. But that one said, if a court dismisses sua sponte without considering the factors, we will not hesitate to remand the case. To go back to what you just said, you're talking about minimum evidence, and that's fine. But that doesn't mean that there's not evidence of a different harm that could have been caused by the maintenance of the equipment. Isn't that correct? So I don't believe there's any science in this litigation, Your Honor, that supports any other type of injury other than NTM infection. Okay. Well, why don't you let this case go back? And I can see the ease of the unknown pine order to limit this case. But if the plaintiff can prove other injury under Louisiana law, what's the problem with allowing him to go back to Louisiana? Well, the multi-district litigation judges have the discretion and the ability to take up any pretrial matters in the cases that are transferred to their jurisdiction, all the way up through dispositive motions. But they can't dismiss a case that has a valid cause of action without cause, can they? I agree with that, Your Honor. They cannot do that. And the plaintiffs here say that under Louisiana law, they can prove a valid cause of action. So if that's true, give them a chance. They can't do it in the multi-district litigation because the multi-district litigation, I think, within its broad discretion, has very appropriately said, we will only deal with this certain type of case. The plaintiffs say our case isn't a certain type of case. We say under, the plaintiffs say under Louisiana law, we have a cause of action. So isn't it appropriate to let them in Louisiana attempt to show that valid cause of action? I would disagree with that, Your Honor, and for these reasons. The hammer's position that he is asserting a cause of action that is different from what exists in the MDL is revisionist history. Okay. You learn as you go along. As I said to your fellow opposing counsel, I used to defend medical malpractice cases. So I'm aware of many cases where the antibiotic has erased the causative organism that caused the infection. There's a question of, should they have prescribed a particular antibiotic without knowing what the cause was? There are potential causes of action there. And if there is one, I think it's appropriate to give the plaintiff a chance to attempt to The only type of bacteria that the science even supports a causal relationship with, the 3T, is non-tuberculous mycobacteria, of which M. abscessus is a part. So if you're right, you win in Louisiana. That's correct, Your Honor. I think the inability of Hammer to produce evidence of an NTM infection is a fundamental failure of proof with his claim. It fails in Louisiana. It fails in the MDL. It fails everywhere. And the NTM infection is what he pleaded, and it's what he claimed in his plaintiff fact sheet. And when push comes to shove and Hammer is ordered to produce evidence to support the allegation that he made in his complaint, he can't do it. And so he goes back and says, well, that wasn't the claim that I was actually making. I'm making this other claim. But if you look at the complaint, respectfully, Your Honors, the complaint doesn't assert any other cause of action. But this would be an amendment after a complaint or after the case has already been dismissed. No, it's a dismissal allowing the possibility of an amendment of the complaint if you wish to stay there or just let it go back to Louisiana and fight it out in that particular jurisdiction. Well, I query what is the cause of action or the theory of liability that would be raised? Well, I mean, among other things, the theory of liability here could be that they, without doing a full investigation, prescribed a far too strong antibiotic and perhaps, indeed, even the wrong antibiotic, which caused injury to this particular individual. So if that were the claim, then there still is no evidence of actual injury because the only suggestion of injury in that circumstance is... But that's why you have discovery. I mean, the point, there are people who are treated for antibiotics. The antibiotics are too strong and there are injuries and it turns out that it wouldn't have been the prescribed medication in any event. They get a chance to prove their case. Let me ask you this. On the police factors, however they're pronounced, let's assume they do apply. And how would you apply them here? There's six of them. Well, so we addressed this in the briefing, Your Honor, but the two factors that I think carry the day are the meritoriousness of the claim and the effectiveness of alternative sanctions because the inability of Hammer to produce evidence of an NTM infection is a fundamental failure of proof and it undermines his claim from the very get-go. And so if a claim is not valid, then there's no other alternative sanction that would be effective. But don't you have to go through those factors? You're looking at factors five and six. And dismissal is a last resort when there's nothing else there. But don't you have to give us some reason why there's nothing else there and therefore it can only be dismissal with prejudice? And I think we do, Your Honor. No, no, I'm talking about the judge. And well, I think the issues that were teed up by the order to show cause were not only the failure of Hammer to produce evidence of NTM infection, it was also the failure to produce any specific causation report. And this was addressed in Mr. Centola's remarks, and he identified the expert report of Chad Roy. Dr. Roy does not opine on causation as to Mr. Hammer. He does not. Mr. Centola and Hammer have not disclosed any specific causation experts in this case. Paragraph 10G of CMO 15 required Hammer. You're not answering my question. My question is why didn't the district judge give an analysis of alternative sanctions and then bat them out of the air? Yeah, I think the district court was following the template that was identified in Asbestos 6. And I believe that is why the police factors were not addressed in that order. Okay, but even Asbestos 6 recognized police factors are the norm. They almost always should be applied. Asbestos 6 had a narrow exception apply. So if we don't find this case on all four with Asbestos 6, the district court ordinarily takes the first crack at the police or police factors. That's correct, Your Honor. That's correct. You don't have any other authority beyond Asbestos 6 for this exception? Well, it's Asbestos 6 and the related Asbestos decisions which are cited in our brief, which also affirm dismissals without analysis of the police factors. And then there's the diet drugs case from 2000 also that affirms dismissal without analysis of police factors. Even if those factors didn't apply, the MDL court here seems to have dismissed Hammer's case just because Hammer had a different causation theory than most of the other cases. How is that in itself not an abuse of discretion? Well, with all due respect, I don't think it's a different causation theory. I think it's no causation theory. Hammer did not produce any specific causation expert report. Well, there is an infection which followed the surgery. That's correct, Your Honor. But it's a staph infection and a P. Acnes infection. And there is literally zero science that supports that a 3T can cause that type of infection. There is no science in this record. There is no science in this country that suggests that. These are common organisms that are the surgical infections. And the 3T is not even on the differential diagnosis in those with respect to those infections. And if the court analyzes the plaintiff's expert reports that are a part of the record, there is no suggestion anywhere that those particular pathogens can that an infection with those pathogens can be caused by the 3T. But here you have to go ahead and finish if you go back to Louisiana. You shouldn't have any problem proving that if that's the case, right? Well, I would I would I would ardently disagree with that. I think that. Oh, well, so I understand that you do have a problem proving it. No, I misunderstood the question. No, that I think we would we would be able to prove that regardless of the jurisdiction. That's certainly our position, Your Honor. Now, is remand appropriate? You know, in the context of multi-district litigation, where, you know, this case is under the jurisdiction of Judge Jones, we would we would disagree with that. And for efficiency and many other reasons, we think he should take this case up. But but it's certainly our position, we'd be able to prove that elsewhere. Yeah, I based on your answer to me just a moment ago, I have an additional problem that the district court did not dismiss this case on the basis of an expert report. It only dismissed because of the lack of an infection. That so the the order itself, the dismissal order itself only refers to the lack of infection. Now, the order to show cause was broader than that. And I think that the district court narrowed, I think the district court perceived that the lack of evidence of NTM infection itself was rendered the the cause of action so fundamentally flawed that he didn't have to go to the expert report. I think if this case is remanded, and the district court considers this issue, again, the expert report is is the failure to produce a specific causation expert report is is is another fundamental flaw in this claim. And even if there are alternative theories of injury, you know, whether it's injury from antibiotics, or any injury that hammer is claiming, there's no specific causation expert report. He was ordered in CMO 15 to produce a specific causation report, and he didn't. And so no matter what the theory of injury is, he has no basis for it. All right. Thank you very much. We'll hear on rebuttal from Mr. Santola. Thank you, Your Honor. Regarding the asbestos litigation, that was unique. The asbestos litigation had the problems with the mass screenings, and not acceptable screening standards. And the asbestos litigation should be factually distinguished from this case, where we know that we have the proper machine, or the appropriate machine for the defendant, we know we have the 20 days in which Mr. Hammer is diagnosed with an MTM infection, and treated for an MTM infection, including a high dose of antibiotics, which causes the eventual injury. That is what's been written out of the story and the facts by defense in the court. Those 20 days are enough under Louisiana to create a cause of action create viable damages. And we do have an expert report regarding how those, how Mr. Hammer eventually was diagnosed with that MTM infection. We do not have a, it doesn't culture out after 20, 21 days. We agree that those are the facts, but we can't write those 20 days out of the story. And that's what creates a cause of action, with respect to the request to be sent back to Louisiana. But do you really have an expert report that is going to be sufficient? I don't know. I don't know Louisiana law. I would certainly, if I were the attorney in this case, be very concerned that to develop a cause of action, I'm going to need more than the expert report I already have. And since, as your opponent has pointed out, in his opinion, and frankly, in my opinion too, his expert report is not necessarily going to be sufficient for the theory you're going to have to develop to provide a cause of action. Are you prepared to find another expert? Absolutely, your honor. And if that's the case, as your honor pointed out, the trial court did not dismiss the case on lack of an expert report, dismiss the case on lack of an MTM growing out after culture. If there is a concern with the causation link between this particular patient and this particular injury, as this injury is different than the rest of the MDL, we are fully prepared to get a causation report that bolsters that if it's not in the opinion of the trial court at this point, significant enough to get over summary judgment. Thank you very much. Thank you to both counsel for a very well argued case, and we'll take the matter under advisement. Thank you for being here. Thank you, your honors.